UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELISSA D.,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

**DECISION AND ORDER**

1:21-CV-00652 EAW

## **INTRODUCTION**

Represented by counsel, plaintiff Melissa D. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), (Dkt. 14; Dkt. 15), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted and Plaintiff's motion (Dkt. 14) is denied.

## BACKGROUND

Plaintiff filed her application for SSI on July 15, 2019. (Dkt. 8 at 18, 326-332).[1] In her application, Plaintiff alleged disability beginning July 12, 2017. (*Id.* at 18, 326). Plaintiff's application was initially denied on November 6, 2019. (*Id.* at 18, 239-248). At Plaintiff's request, a telephone hearing was held before administrative law judge ("ALJ") Mary Mattimore on July 16, 2020. (*Id.* at 134-63). On August 17, 2020, the ALJ issued an unfavorable decision. (*Id.* at 18-32). Plaintiff requested Appeals Council review, and her request was denied on March 19, 2021, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-12). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment ("Listing") in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since July 15, 2019, the application date.  (Dkt. 8 at 20).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of chronic migraines without aura, obesity, sacroiliac dysfunction with myalgia in the head

and neck due to cervical degenerative disc disease, myofascial pain, pudendal neuralgia, and pelvic floor dysfunction. (*Id.* at 21). The ALJ further found that Plaintiff's medically determinable impairments of gastroesophageal reflux disease, hypothyroidism, adjustment disorder with anxiety and depressed mood, and post-traumatic stress disorder were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 23). The ALJ particularly considered the criteria of Listings 1.04, 11.14, and Plaintiff's obesity and headaches in reaching her conclusion. (*Id.* at 23-24).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except with the following limitations:

> [Plaintiff] can perform low stress job defined as simple routine work and make simple workplace decisions due to pain and medication side effects. [Plaintiff] requires the freedom to take 2 extra 5 minute restroom breaks daily. [Plaintiff] can occasionally push and pull bilaterally. [Plaintiff] can never climb stairs, ladders, ropes or scaffolds and can never crouch. [Plaintiff] can occasionally operate foot controls bilaterally. [Plaintiff] can occasionally balance, stoop, kneel, and crawl. [Plaintiff] can have no exposure to temperature extremes. [Plaintiff] may experience off-task behavior due to symptom exacerbation of up to 5 % of the day (due to migraines, fatigue and pain).

(*Id.* at 24).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 30). The ALJ further relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing

in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of marker, router, cashier II, addresser, document preparer, and call out operator. (*Id.* at 31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 32).

II.  **The ALJ's Decision is Supported by Substantial Evidence and Free From Reversible Error**

Plaintiff asks the Court to reverse the Commissioner's decision and remand for additional administrative proceedings, arguing that: (1) the RFC is not based on substantial evidence with regard to off-task limitations; and (2) the ALJ erred by failing to consider how Plaintiff's limitations would affect her ability to perform work during a probationary period. (Dkt. 14-1 at 23-30). The Court is not persuaded by these arguments for the reasons discussed below.

A.  **The Specific Findings Relating to Time Off-Task and Need for Bathroom Breaks in the RFC are Supported by Substantial Evidence**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant

> argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC. In that context, [w]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capacities . . . the Commissioner may not make the connection himself. Thus, the ALJ may not interpret raw medical data in functional terms.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotations and citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Likewise, "[a] very specific RFC assessment—such as the specific amount of time a claimant can spend on certain activities—must be based on evidence in the record, not on 'the ALJ's own surmise.'" *Heckman v. Comm'r of Soc. Sec.*, No. 18-CV-6032, 2019 WL 1492868, at *3 (W.D.N.Y. Apr. 4, 2019) (quoting *Cosnyka v. Colvin*, 576 Fed. App'x 43, 46 (2d Cir. 2014)). However, an ALJ does not commit reversible error where she gives a claimant the benefit of the doubt and assesses limitations more severe than those supported by the medical evidence of record based on the claimant's subjective complaints. *See, e.g., Jessica Lynn J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00084 EAW, 2022 WL 17494109, at *6 (W.D.N.Y. Dec. 8, 2022) ("Here, the ALJ was not purporting to adopt a medical examiner's opinion based on his own lay interpretation. Instead, he permissibly partially credited Plaintiff's subjective complaints and accordingly included in the RFC finding a limitation that was not identified by the medical opinions of record. This does not entitle Plaintiff to a reversal of the Commissioner's determination."); *see also Lynneesa M. v.*

*Comm'r of Soc. Sec.*, No. 1:20-CV-00971 EAW, 2021 WL 4437184, at *5 (W.D.N.Y. Sept. 28, 2021) ("[This] is a case in which the ALJ, in fashioning the RFC, exercised her discretion to assess limitations more severe than those supported by the medical evidence of record in deference to Plaintiff's testimony.  This does not constitute reversible error."); *Mary Diane K. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 270, 276 (W.D.N.Y. 2021) ("It was further not erroneous for the ALJ to partially credit Plaintiff's testimony regarding her own limitations and assess more restrictive manipulative and environmental limitations than those identified by the consultative examiners."); *Hamilton v. Comm'r of Soc. Sec.*, No. 19-CV-770 (JLS), 2020 WL 5544557, at *6 (W.D.N.Y. Sept. 16, 2020) ("[The plaintiff] essentially argues that the ALJ was wrong to accept portions of her testimony regarding her limitations, which were not covered in a medical source opinion.  But this does not constitute reversible error.").

In this case, the ALJ assessed medical opinion evidence from State Agency psychiatric consultants H. Ferrin, Ph.D., and J. May, Ph.D; State Agency medical consultant J. Koenig, M.D.; Amy Benjamin, M.D.; Gary Wang, M.D.; consultative physician Nikita Dave, M.D.; Susan Santarpia, Ph.D.; and Plaintiff's physical therapist in determining the RFC. (Dkt. 8 at 28-30).  None of these providers opined that Plaintiff required time off-task or two additional bathroom breaks.  However, Plaintiff testified at the hearing that "because of her combined physical conditions, primarily resulting from difficult childbirth in July 2017, she experiences symptoms of chronic pain, fatigue, limitations of mobility, sleep disruption, weakness, numbness, swelling, and frequent use of the restroom due to abdominal pain and hemorrhaging."  (*Id*. at 25).

The ALJ explained that she weighed Plaintiff's subjective complaints against the medical assessments and objective findings in the record, considered her activities of daily living and evidence of non-compliance, and concluded that Plaintiff maintained an RFC to perform light work with nonexertional limitations that included bathroom breaks and 5% off-task time. (*See id.* at 26). Specifically, the ALJ expounded that "[t]he additional limitation for extra breaks to use the restroom accommodate [Plaintiff's] pelvic issues including high-tone pelvic floor dysfunction with pudendal neuralgia after traumatic pregnancy with status post perineal tear and abdominal scarring." (*Id.* at 27). She also noted that "[t]he non-exertional limitations including avoiding temperature extremes, occasional postural activities, and time off-task outlined above accommodate [Plaintiff's] alleged migraines." (*Id.*).

The Court does not conclude that the ALJ was purporting to adopt a medical provider's opinion based on her own lay interpretation, nor is resolution of conflicting aspects of the record outside of the ALJ's discretion. Instead, the ALJ permissibly partially credited Plaintiff's subjective complaints and accordingly included in the RFC finding a limitation for time off-task and bathroom breaks that was not identified by the medical opinions of record. This does not entitle Plaintiff to a reversal of the Commissioner's determination. *See Holli M. v. Comm'r of Soc. Sec.,* No. 1:20-CV-1525-DB, 2022 WL 826981, at *11 (W.D.N.Y. Mar. 18, 2022) (denying Plaintiff's motion for judgment on the pleadings where "[h]ere, despite the fact that no physician assessed any specific off-task limitation percentage, the ALJ explained that he included an off-task limitation of 5% based on evidence in the record documenting Plaintiff's difficulty staying on task"); *see also*

*Andre J. v. Kijakazi*, No. 20-CV-882F, 2021 WL 5074719, at *5 (W.D.N.Y. Nov. 2, 2021) ("Although neither Dr. Fabiano nor Dr. Fassler opined that Plaintiff would be off-task for an additional 5% of the work day, the ALJ, in fashioning the specific limitation, exercised his 'discretion to assess limitations more severe than those supported by the medical evidence of record in deference to Plaintiff's testimony,' which is not reversible error." (quotation and citation omitted)); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("Neither Dr. Ransom nor NP Pfalzer opined that Plaintiff would be off-task for more than 5% of the workday, or indeed for any percentage of the workday.  It appears the ALJ credited Plaintiff's testimony that she could not focus and was easily distracted, and assessed a more generous limitation of 5% off-task time.  The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand."   (internal citation omitted)). Accordingly, remand is not warranted on this basis.

**B.  The VE's Testimony Regarding a Probationary Period is not Inconsistent with Plaintiff's RFC**

Plaintiff next argues that the ALJ failed to adequately explain and consider the impact that a probationary period would have on the RFC determined by the ALJ, arguing that there existed an apparent conflict between the VE's testimony and the RFC that would preclude Plaintiff's employment in any of the identified job positions.  The Court disagrees.

The Second Circuit has held that "the ability to complete a probationary period is relevant to a claimant's ability to perform significant numbers of jobs in the national economy at step five." *Sczepanski v. Saul*, 946 F.3d 152, 158 (2d Cir. 2020).  The Court

reasoned that "[t]he ability to complete a probationary period is thus tantamount to the ability to keep a job, and as multiple circuits have recognized, the ability to keep a job is a necessary prerequisite to the ability to engage in substantial gainful activity." *Id.* at 159.

Here, after identifying representative occupations in the national economy that a hypothetical individual with Plaintiff's RFC could perform, the VE was asked by Plaintiff's counsel whether there are tolerances for absenteeism or time off-task during a "typical employer probationary period." (Dkt. 8 at 161). The VE responded that "[d]uring the probationary period, typically absences are not allowed and the worker is required to be on-task to learn the job." (*Id.*). The VE further indicated that a probationary period can typically last 30 to 90 days, depending on the employer. (*Id.*).

Plaintiff argues that the VE's testimony regarding restrictions during a probationary period creates a conflict that effectively precludes Plaintiff's employment. But Plaintiff overstates the VE's testimony. The VE was not asked about the impact of a probationary period on the RFC as it specifically relates to the representative occupations identified, but rather was questioned about a generic "typical employer probationary period." (*Id.*). She also noted that requirements of a probationary period vary "depending on the employer." (*Id.*). Moreover, the VE did not testify that there was a 0% off-task tolerance during a probationary period, but rather said that in a probationary period "the worker is required to be on-task to learn the job," and implied that it was a lesser tolerance than what she previously identified as the normal 15% off-task tolerance. (*Id.*). She never testified that Plaintiff's limitations would exceed this tolerance. In other words, contrary to Plaintiff's contention, there does not appear to be a conflict between the VE's testimony and the RFC

because the VE's testimony can fairly be read as allowing up to a 5% off-task tolerance, even during the probationary period. *See Camacho v. Kijakazi*, No. 21-CV-5811 (JW), 2022 WL 4585420, at *11 (S.D.N.Y. Sept. 29, 2022) ("As for whether absences specifically during a probationary period were work preclusive, the VE testified that it 'depends on the employer.'. . . This indicates that there are jobs in the national economy that would allow Plaintiff to miss days, assuming they were scheduled, and still pass through a probationary period.").

Moreover, when the ALJ asked the VE if her testimony was consistent with the Dictionary of Occupational Titles, the VE stated, "Yes, testimony regarding the probationary period, time off task, absenteeism, the additional rest breaks, the distinction in climbing ladders, ropes, and scaffolds versus climbing in general—those areas are based on my professional experience, education, and training in job placement, job analysis, and job development." (*Id.* at 161-62). The ALJ confirmed this conclusion in addition to her determination as to absenteeism and time off-task in the step five analysis contained in her decision:

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is found to be consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert testified that the push/pull limits, probationary period, time off-task and rates of absenteeism, and the like are not accommodated in the DOT, and that the number of jobs which would accommodate these limitations was reduced based on her own professional experience, including supervised labor market surveys, reviewing reports from employers on how these jobs are done in the job environment, and placing individuals in these jobs as well as training and experience in providing vocational services through which he has gained specific familiarity with the essential functions of the jobs identified. The undersigned finds that this is a reasonable explanation (Social Security Ruling 00-4p).

> The undersigned rejects [Plaintiff's] representative proposed limitations involving probation period for absenteeism and time off-task because they are inconsistent with [Plaintiff's] own admitted abilities and not supported by the objective evidence of record, which reflects grossly normal clinical and mental status examination findings as outlined above.

(*Id.* at 31-32). The Court concludes that the ALJ has adequately explained why she did not include a tolerance for absenteeism in the RFC or find that Plaintiff would be off-task a sufficient percentage of the time to preclude employment even during the probationary period (*i.e.*, amounting to a percentage of time that would prohibit her from learning the job), based on the medical evidence of record. The ALJ's inquiry of the VE satisfied her duty to resolve any potential conflicts between the representative occupations and the limitations in the RFC. *See Lisa T. v. Comm'r of Soc. Sec.*, No. 1:21-CV-469-DB, 2023 WL 203363, at *10 (W.D.N.Y. Jan. 17, 2023) (noting that regulations "require[] an ALJ to resolve any apparent conflicts between a VE's testimony and the DOT before relying on the VE's testimony"). Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff's RFC would permit employment and the VE's testimony does not conflict with the conclusion that Plaintiff was able to perform the identified occupations, inclusive of any probationary period. In sum, remand is not warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 6, 2023
            Rochester, New York